Neal J. Stephens (State Bar No. 152071)
Jeffrey B. Schenk (State Bar No. 234355)
Thao Donnelly (State Bar No. 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:  +1.650.739.3939
Facsimile:  +1.650.739.3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Edward W. Swanson (State Bar No. 159859)
August P. Gugelmann (State Bar No. 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone:  +1.415.477.3800
Facsimile:  +1.415.477.9100
Email: ed@smllp.law
Email: august@smllp.law

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, ANDRE JONES, DAVID TRUNG DUONG, and ANDY HUNG DUONG,<br><br>Defendants. | Case No. 4:25-CR-00003-YGR<br><br>**REPLY MEMORANDUM IN SUPPORT OF DAVID DUONG'S MOTION TO MODIFY FILTER TEAM PROTOCOL**<br><br>Hearing Date:  April 24, 2025<br>Hearing Time:  10:30 am<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, 4th Floor |

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **THE COURT SHOULD GRANT THE REQUESTED RELIEF**

The government concedes two critical facts that demonstrate why this Court should grant this motion. First, the government admits that it failed to obtain prior approval from the Magistrate Judge before it began reviewing privileged material. The government does not cite any authority to counter the established principle that "it is obvious that no governmental entity should intentionally review privileged material without the express approval of the court." *United States v. Pedersen*, 2014 WL 3871197, at *29 (D. Or. Aug. 6, 2014).

Second, the government admits that it designed its filter team protocol to allow the filter team to disclose certain documents to the prosecution team without providing defense counsel an opportunity to raise objections to the Court before the prosecution team receives the documents. *See,* ECF 56-2, Stern Declaration, ¶¶ 3-4. As a result, the government acts as the sole arbiter of the privilege determinations on those documents—a violation of bedrock separation of powers principles. This "no oversight" aspect of the government's filter team protocol generates the "fox guarding the hen house" dilemma—where filter team agents can disclose privileged materials to their colleagues on the prosecution team without any check from defense counsel or the Court.

The government also overstates the impact the requested relief will have on the review of the privileged material. The issue before the Court is ***not*** whether all filter team protocols are *per se* illegal such that this filter team must terminate its work and turn over the seized materials to the Court to conduct the entire privilege review. Defense counsel does not "demand to stop the review." Nor does the defense request that this Court review every privilege determination.

Instead, the issue before the Court is simply whether additional guardrails should be added to the filter team protocol given that it is undisputed that the current protocol allows the filter team to disclose documents to the prosecution team without any judicial oversight. *See,* ECF 49 at 1:4-7; 1:22-28; 3:13-4:8; 7:23-8:3 and 9:24-10:1. The structural problems with the government's existing protocol can be cured with fairly limited relief. The defense is simply asking that the filter team (a) provide defense counsel a reasonable opportunity to object to the filter team's privilege calls, and (b) return all copies of all privileged materials to the relevant

defense counsel. When analyzed through the lens of the undisputed facts on the actual issue before the Court, the government's arguments all fail.

### A. The Government's Filter Team Protocol Violates Bedrock Separation of Powers Principles.

It is undisputed that the government's protocol allows the filter team to disclose certain documents – i.e., documents that did not hit on search terms and documents the filter team classified as "clearly not privileged" – directly to the prosecution team without any judicial oversight. *See,* ECF 56-2, Stern Declaration, ¶ 3 ("[t]he filter team was instructed to release materials that did not hit on the search terms to the prosecution team.") and ¶ 4 ("with respect to the remainder of the materials that hit on certain search terms, the filter team was instructed to review these materials and pass along any material that was clearly not privileged to the prosecution team…").

Thus, the government's "no oversight" process violates separation of powers principles because it authorizes the executive branch—via its filter team—to make decisions on attorney client privilege that are reserved to the judicial branch. *United States v. Under Seal (In re Search Warrant Issued June 13, 2019)*, 942 F.3d 159, 176-77 (4th Cir. 2019), as amended (Oct. 31, 2019) (rejecting filter team protocol that allowed the filter team to forward documents it classified as nonprivileged directly to the prosecution team).

The government attempts to distinguish the Fourth Circuit's reasoning by asserting that the search in this case did not involve the search of a lawyer's office. The government states that "federal agents spoke with CWS' in-house counsel, determined which CWS offices belonged to lawyers, and did not search those lawyer offices in order to respect the privilege that may attach to documents there." ECF 56 at 2:17-19. The government also states that "it is important to note that the searches here did not involve searches … that in any way were designed to or could have directly targeted the confidential advice provided to the defendants by any attorneys." *Id.* at 7:19-21. The government's reasoning is flawed.

First, it is undisputed that the government seized materials containing privileged communications involving Mr. Duong. The federalism principles at issue apply to the ***content*** of

the material seized – privileged material – not merely the *location* where those materials were stored – a law office vs. an executive's office at CWS, a network server, an electronic storage device, or Mr. Duong's residence.

Second, the government's position is factually inaccurate. Sooah Sohr, in-house counsel for CWS, spoke with the lead IRS agent on scene at CWS on the morning of the search. Reply Declaration of Sooah Sohr in Support of Motion to Modify Filter Team Protocol ("Sohr Decl." ¶ 3). Ms. Sohr told the agent that she maintained privileged documents in several locations inside CWS' office—including her personal office, Mr. Duong's office, and the offices of CWS' CFO and HR Manager—and asked that the agents not seize the privileged information. *Id.* The agent instructed Ms. Sohr to unlock and open her personal office, which was closed and locked. *Id.* at ¶ 4. Ms. Sohr opened her office for the agent. *Id.* The agent then instructed Ms. Sohr to leave the premises so Ms. Sohr left the building. *Id.* When Ms. Sohr returned after the agents had finished their search and departed, she noticed that documents located inside her office had been moved—suggesting that agents had entered her office and searched her records. *Id.* Agents also seized documents from the offices of Mr. Duong, the CFO, and the HR Manager—the locations where Ms. Sohr told the agent that she stored privileged material. Reply Declaration of Neal J. Stephens in Support of Motion to Modify Filter Team Protocol ("Stephens Reply Decl.") ¶¶ 1-2, Exhibits A and B.

The agents who searched CWS also seized numerous electronic storage devices and imaged CWS' network server. *Id.*, Exhibit B at 16-17. That electronic data will include privileged material generated by Ms. Sohr. Given that the government seized privileged material involving Ms. Sohr, there is no meaningful difference between the facts in this case and the facts in *In re Search Warrant Issued June 13, 2019*. In both cases, the government seized privileged material from an attorney. Accordingly, the federalism principles that drove the holding in the Fourth Circuit's decision also apply here.

The government also cites a series of cases that have no bearing on the issues in this case. For example, the government cites *United States v. Jarman,* 847 F.3d 259, 266 (5th Cir. 2017) to assert that numerous federal circuits have endorsed the terms of their filter team protocol. ECF

- 3 -

56 at 7:14-15. But the quote the government attributes to the Fifth Circuit in *Jarman* does not exist in the court's opinion. *Jarman*, 847 F.3d at 266. The issue in *Jarman* involved a review of a denial of a motion to suppress, not whether a filter team protocol is adequate when it allows the filter team to disclose documents to the prosecution team without any judicial oversight. *Id.* at 261. In short, the court in *Jarman* did not analyze how other circuits assess filter team protocols that contain the "no oversight" flaw that exists in the filter team protocol in this case. *Id.*

The government's remaining cases are also off point. *See, United States v. Young*, 2015 WL 5138520 (N.D. Cal. Sept. 1, 2015) (motion to suppress statements to an informant, not a challenge to a filter team protocol); *United States v. Backstad*, 2020 WL 5992347 (S.D.N.Y. Oct 9, 2020) (motion to suppress and other pretrial motions, not a challenge to a filter team protocol); *In re Search Warrants Executed on Apr. 28, 2021*, 2021 WL 2188150 at *2 (S.D.N.Y. May 28, 2021) (intervenors in a pending grand jury investigation seeking appointment of a special master, return of warrant materials, and pre-indictment discovery of the government's privilege and responsiveness designations); *United States v. Yang*, 2019 WL 5864733 (N.D. Cal. Nov. 7, 2019) (motion to dismiss on limitations grounds, not a challenge to a filter team protocol).

    **B.**    **The Government's Filter Team Protocol Creates the "Fox Guarding the Henhouse" Problem.**

The government's filter protocol also presents the "fox guarding the hen house" problem because members of the filter team could either mistakenly or intentionally violate their ethical obligation and pass privileged information to the prosecution team by simply classifying it as "clearly not privileged." *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006).

The government attempts to distinguish the Sixth Circuit's reasoning by emphasizing that this matter relates to a seizure of privileged material via a search warrant, not a grand jury subpoena. ECF 56 at 9:12-28. The government suggests that the Sixth Circuit approved the use of any type of filter team protocol – regardless of its terms – if the government seized the privileged materials via a search warrant. *Id.* at 10:1-4. But the Sixth Circuit did not give blanket approval to any and all filter team protocols where the government proceeded via a search warrant. Instead, the Sixth Circuit focused on whether the protocol at issue contained a "check … against the possibility that

the government's team might make some false negative conclusions." *In re Grand Jury Subpoenas*, 454 F.3d at 523. In that case, like ours, the proposed protocol was flawed because "appellants' attorneys would have an opportunity to assert privilege *only* over those documents which *the taint team has identified* as being clearly privileged or possibly privileged." *Id.* (emphasis in original). In other words, it may be possible for the government to draft an acceptable filter team protocol when it proceeds via search warrant. But the government failed to do so in this case. The filter team protocol in this case is defective because it lacks the "check" on false negative conclusions and thereby suffers from the same "fox guarding the hen house" defect that doomed the filter protocol in *In re Grand Jury Subpoenas*. *Id.*

The government's filter team protocol also contradicts ethical guidance provided by the Department of Justice. The Professional Responsibility Advisory Office ("PRAO") at Main Justice provides ethical guidance to federal prosecutors about their professional responsibilities, including how to design an appropriate filter team protocol. Stephens Reply Decl. ¶ 3, Exhibit C. PRAO has confirmed that "the courts, of course, are the arbiters of what constitutes an 'adequate' filter team." *Id.*, Exhibit C at 1. PRAO has also advised that best practices for filter team protocols include "permitting court review of challenged documents *prior* to handing such documents over to the prosecution team." *Id.*, Exhibit C at 2. (emphasis added).

In other words, PRAO has advised federal prosecutors to respect the separation of powers principles expressed by the Fourth Circuit and avoid the "fox guarding the hen house" problem emphasized by the Sixth Circuit. An appropriate filter team protocol cannot allow the filter team to disclose a class of documents to the prosecution team—like the documents classified as "clearly not privileged" here—without allowing for judicial oversight of those privilege decisions. In addition, PRAO does not take the position that the government can design a filter team protocol that ignores all of these concerns simply because the government obtained the documents via a search warrant as opposed to a grand jury subpoena. *Id.* In short, the government's filter protocol conflicts with ethical guidance on best practices for filter teams from Main Justice.

### C. Mr. Duong's Motion is Timely

The government argues that the Court should deny this motion as untimely. ECF 56 at 1:17-19. The government, however, fails to cite any case law to support its argument. The facts demonstrate that this motion is timely. Undersigned counsel raised this issue with the government on February 5, 2025, the day before the first status conference before this Court. In addition, the government did not unseal the indictment until January 17, 2025. While the government did obtain search terms from Mr. Duong's prior counsel, the government did not share the format of its filter protocol with prior counsel so Mr. Duong's counsel was not aware of the structural defects in the government's filter team process.

### D. The Proposed Relief is Reasonable

The government argues that the proposed relief "would have the effect of unnecessarily freezing the government's review and thereby delaying the production of discovery to all defendants." ECF 56 at 1:28-2:1. The government also asserts that Mr. Duong demands that the Court "stop the review." *Id.* at 7:22. These statements exaggerate the requested relief. Defense counsel is not trying to stop the filter team review. Defense counsel merely seeks a reasonable amount of time to review the material that the filter team intends to disclose to the prosecution team so that counsel can raise any objections before the filter team discloses that material to the prosecution team. As noted above, the proposed relief is consistent with both the leading case law in this area and ethical guidance from the Department of Justice.

The government also argues that it should not have to return all copies of privilege materials that are contained on digital and electronic media. *Id.* at 11:10-22. The government does not cite any case law to support its position. Courts, by contrast, understand that the whole point of a filter team process is to identify privileged material and return that material to its owner—the government is not entitled to keep any copy of the privileged material. *See, Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599 (5th Cir. 2021) ("[A] taint team serves no practical effect if the government refuses to destroy or return the copies of documents that the taint team has identified as privileged.").

Instead of citing case law to support its argument, the government relies on language that

it drafted into its search warrant application. The government's approach on this issue suffers from the same flaw as its defense of its defective filter team protocol. The government created a flawed process that it wants to follow and then it relies on the process it created—not the case law—as justification to continue to follow its flawed process. This circular reasoning is not persuasive.

In addition, the government asserts that it will not return privileged information stored on electronic devices because "some of these seized devices will likely be admitted into evidence at trial." *Id.* at 11:15-18. In other words, the prosecution team intends to introduce privileged material into evidence at trial. The prosecution team is not entitled to possess the privileged information—let alone use it at trial. The government's position underscores why the defendants are seeking an order requiring the filter team to return all copies of all privileged material to the appropriate defense attorney. *See, Harbor Healthcare Sys., L.P.,* 5 F.4th at 599 (by refusing to return privileged materials, "the government has thus conceded that it has no intent to respect Harbor's interest in the privacy of its privileged materials as the investigation unfolds.")

Finally, while the government claims that the initial phase of its filter review process is 90% complete, the filter team has not returned a single page of privileged or potentially privileged material to counsel for Mr. Duong. Stephens Reply Decl. ¶ 4.

## II. CONCLUSION

For the reasons stated above, defendants respectfully request that the Court grant this motion and the relief in their proposed order.

DATED: April 10, 2025

Respectfully Submitted,

JONES DAY

*/s/ Neal J. Stephens*
NEAL J. STEPHENS
JEFFREY SCHENK
THAO DONNELLY

SWANSON & McNAMARA LLP


*/s/ Edward w. Swanson*
EDWARD W. SWANSON
AUGUST P. GUGELMANN

Attorneys for Defendant
David Trung Duong

## CERTIFICATE OF SERVICE

I, Trudy Carney, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Silicon Valley Office, 1755 Embarcadero Road, Palo Alto, California 94303. On April 10, 2025, I served a copy of the Reply Memorandum in Support of David Duong's Motion to Modify Filter Team Protocol by electronic transmission.

I am familiar with the USDC Northern District's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the Court. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

Executed on April 10, 2025, Palo Alto, California.

_____
Trudy Carney

NAI-5000366021v1