Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendant. | Case No. CR 25-0003 YGR<br><br>**NOTICE AND MOTION FOR PRODUCTION OF MARIO JUAREZ'S TAX RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: October 19, 2026<br>Time: 8:00 a.m.<br>Courtroom: 1, 4th Floor |

**NOTICE**

PLEASE TAKE NOTICE that on October 19, 2026, or as soon as the matter may be heard before the Honorable Yvonne Gonzalez Rogers, that defendant David Duong will and hereby does move the Court for an order compelling the government to produce the personal and business tax returns from 2022 to present for cooperating defendant Mario Juarez. Counsel for David Duong anticipates that defense counsel for the other defendants will join this motion. This motion is based on Rule 5(f) and Rule 16 of the Federal Rules of Criminal Procedure, the Fifth and Sixth Amendments to the United States Constitution and the government's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

Dated: September 28, 2026

JONES DAY

By: *_____/s/ Neal J. Stephens_____*
Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

A. The Indictment ........ 1

B. The IRS as a Lead Investigative Agency ........ 2

C. The Meet and Confer with the Government ........ 2

III. ARGUMENT ........ 3

A. Rule 16 Compels the Disclosure of Juarez's Tax Returns ........ 3

B. Brady Requires the Disclosure of Juarez's Tax Returns ........ 6

1. Juarez's Tax Returns Are Material Under Brady ........ 6

2. The Government Has Knowledge of and Access to the Tax Returns ........ 7

a. The Government Has an Affirmative Duty to Seek Out and Produce Juarez's Tax Records. ........ 7

b. IRS-CI is on the Prosecution Team for Brady Purposes. ........ 8

c. The Prosecutors Have Knowledge of and Access to Documents Stored at IRS. ........ 9

d. Defendants' Constitutional Rights to Exculpatory Information Override the Government's Statutory Objection Pursuant to 26 U.S.C. Section 6103. ........ 10

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Brady v. Maryland*,
373 U.S. 83 (1963) ........ 6, 12

*Carriger v. Stewart*,
132 F.3d 463 (9th Cir. 1997) (en banc) ........ 6, 8

*Crane v. Kentucky*,
476 U.S. 683 (1986) ........ 4

*Davis v. Alaska*,
415 U.S. 308 (1974) ........ 4

*Giglio v. United States*,
405 U.S. 150 (1972) ........ 6

*Kyles v. Whitley*,
514 U.S. 419 (1995) ........ 7, 12

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987) ........ 10, 11

*Rodriguez v. C.I.R.*,
T.C. Memo 2001-36 (2001) ........ 4

*Tax Analysts v. Internal Revenue Service*,
117 F.3d 607 (D.C. Cir. 1997) ........ 5

*United States v. Aichele*,
941 F.2d 761 (9th Cir. 1991) ........ 13

*United States v. Bagley*,
473 U.S. 667 (1985) ........ 7

*United States v. Bernal-Obeso*,
989 F.2d 331 (9th Cir. 1993) ........ 6

*United States v. Blanco*,
392 F.3d 382 (9th Cir. 2004) ........ 4, 7, 8

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989)........ 8

*United States v. Cutting*,
No. 14-cr-00139, 2017 WL 132403 (N.D. Cal. 2017)........ 10

*United States v. Doe*,
705 F.3d 1134 (9th Cir. 2013)........ 3

*United States v. Hernandez-Meza*,
720 F.3d 760 (9th Cir. 2013)........ 3

*United States v. Holmes*,
No. 5:18-cr-00258, 2019 WL 5722573 (N.D. Cal. 2019)........ 10

*United States v. Lloyd*,
71 F.3d 408 (D.C. Cir. 1995)........ 11, 12

*United States v. McVeigh*,
954 F. Supp. 1441 (D. Colo. 1997)........ 12

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009)........ 6, 8

*United States v. Prokop*,
No. 2:09-cr-00022, 2012 WL 2375001 (D. Nev. 2012)........ 11

*United States v. Santiago*,
46 F.3d 885 (9th Cir. 1995)........ 9

*United States v. Shaffer*,
789 F.2d 682 (9th Cir. 1986)........ 6, 7

*United States v. Swenson*,
No. 1:13-cr-00091, 2013 WL 4735591 (D. Idaho Sept. 3, 2013)........ 4, 5

*United States v. W.R. Grace*,
401 F. Supp. 2d 1069 (D. Mont. 2005)........ 7, 12

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995)........ 8, 9, 10

*Wearry v. Cain*,
577 U.S. 385 (2016)........ 6

**STATUTES**

18 U.S.C. §§ 371 and 1341 ........................................................................................ 1, 2, 9

26 U.S.C. § 6103 ..................................................................................................... passim

**RULES**

Rule 5(f) of the Federal Rules of Criminal Procedure ........................................................ 1, 7, 12

Rule 16 of the Federal Rules of Criminal Procedure ........................................................... passim

**OTHER AUTHORITIES**

Fifth Amendment ............................................................................................... 1, 4, 6, 11

Sixth Amendment ....................................................................................................... 1, 4

Fourteenth Amendment..................................................................................................... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The issue presented is whether the government can withhold tax returns of a testifying cooperating defendant where the IRS is an investigating agency in this case, the IRS is charged with the administration of statutes allegedly violated by the defendants, the prosecution team has knowledge of and access to the documents at issue, the documents are material under both Rule 16 and *Brady,* and, if requested by the government, the cooperating defendant is obligated to provide this information to the government pursuant to the terms of his plea agreement.

David Duong seeks the tax records from 2022 to present of the government's main witness, Mario Juarez, and his company, Ciudad Holdings, because those records will help the defense identify evidence that supports its theory of defense as well as avenues to impeach Mr. Juarez's credibility. The government is obligated to produce this information pursuant to its discovery obligations under Rules 5(f) and 16 of the Federal Rules of Criminal Procedure and the Fifth and Sixth Amendments to the United States Constitution.

## II. FACTUAL BACKGROUND

### A. The Indictment

On January 9, 2025, the government charged Sheng Thao, Andre Jones, David Duong, and Andy Duong in an eight-count indictment related to allegations of bribery. ECF 1. The indictment includes alleged violations of 18 U.S.C. §§ 371 and 1341. *Id.* at ¶¶ 59-63 and 71-72. Trial is set to begin on October 13, 2026.

Mario Juarez is identified as Co-Conspirator 1 throughout the indictment. *Id.* The government does not dispute that Juarez is their main witness at trial. Declaration of Neal Stephens ("Stephens Decl."), ¶ 2, Exhibit 1. The government also does not dispute that it paid Juarez approximately $11,668 for hotel and other "maintenance and security" costs—monies that Juarez is obligated to report as income on his tax returns. Stephens Decl., ¶ 3, Exhibit 2. In addition, Juarez and his company, Ciudad Holdings, received monies from 2022 to 2024 from Evolutionary Homes and California Waste Solutions as part of the alleged scheme. ECF 1 at ¶¶ 8, 14, 63.

As part of his plea agreement with the government, Juarez agreed to provide the prosecutors with any documents they requested. Stephens Decl., ¶ 4. As a result, Juarez is obligated to provide the government with copies of the documents at issue here if the government requests the information from him.

**B. The IRS as a Lead Investigative Agency**

The criminal division of the IRS ("IRS-CI") is a lead investigative agency in this matter, along with the FBI and U.S. Postal Service. Per Section 6.4-110 of the Justice Manual, IRS-CI is authorized to conduct investigations into allegations of criminal violations arising under Title 18 U.S.C. §§ 371 and 1341, both of which are charged in this case. ECF 1 at ¶¶ 59-63 and 71-72; Stephens Decl., ¶ 5, Exhibit 3. In addition, the IRS maintains tax return information in a database known as the Integrated Data Retrieval System ("IDRS"). Stephens Decl., ¶ 6. In tax investigations that IRS-CI works with the Department of Justice ("DOJ"), IRS-CI agents can directly access the IDRS system to review tax return information of subjects in the investigation, like Juarez in this case, with the approval of a supervisor at IRS-CI. Stephens Decl., ¶ 6.

**C. The Meet and Confer with the Government**

On January 21, 2025, counsel for David Duong sent a discovery letter to the government seeking Rule 16 discovery and all exculpatory information, including exculpatory information related to Juarez. Stephens Decl., ¶ 8, Exhibit 5. On May 26, 2026, counsel for Andy Duong sent a follow up letter to the government inquiring about the status of the production of Juarez's financial records, including his tax records. Stephens Decl., ¶ 8, Exhibit 6.

On September 13, 2026, defense counsel sent an email to the government regarding the status of the production of Juarez's tax records. Stephens Decl., ¶ 7, Exhibit 4. On September 15, 2026, the government responded and stated that it would not produce Juarez's tax records because the prosecution team claimed that it did not possess the requested information. *Id.* On September 16, 2026, defense counsel sent additional case law support for its request. *Id.* On September 21, 2026, defense counsel sent a follow-up email requesting the government's position. *Id.* On September 22, 2026, the government responded that it would not produce Juarez's tax records because it was not obligated to submit an application to the Court under 26

U.S.C. § 6103 to obtain Juarez's tax records. *Id.* On September 22, 2026, defense counsel asked government counsel if they disputed two facts related to their claim that IRS-CI did not have access to Juarez's tax records: (1) the database that holds Mr. Juarez's tax return information at IRS can be accessed by both IRS-CI and IRS-Civil directly, and (2) when IRS-CI works a criminal tax investigation with the Justice Department, an IRS-CI agent simply needs the approval of an IRS-CI supervisor to access the IDRS database to obtain tax return information. IRS-CI does not need to obtain a 6103 order—the IRS-CI agent just sends an "IDRS request" to an IRS-CI supervisor. *Id.* The government did not respond to dispute either fact.

On September 25, 2026, after not hearing back from government counsel, defense counsel sent a final email seeking to resolve this discovery dispute without involving the Court. *Id.* Given that Juarez's plea agreement requires him to provide the government with any documents they request from him, defense counsel offered a practical solution to attempt to resolve the issue—the government could ask Mr. Juarez to provide them with his tax records. While defense counsel is not suggesting the government is legally compelled to make the request, doing so would eliminate the government's perceived obstacle to resolving this dispute related to Section 6103. The government declined to make the request to Juarez. This motion followed.

## III. ARGUMENT

### A. Rule 16 Compels the Disclosure of Juarez's Tax Returns

Pursuant to Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure, the government is obligated to produce documents that are material to preparing the defense. Materiality is a "low threshold"—it is satisfied so long as the information in Juarez's tax returns will help defendants prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). "Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *Id.,* citing *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013). Rule 16 also covers a broader scope of discovery than the government's *Brady* obligations because information that is not exculpatory or impeaching may still be relevant to developing a possible defense. *Doe*, 705 F.3d at 1151.

Here, in or about June and July 2024, the FBI paid Juarez approximately $11,668 for hotel

and other "maintenance and security" costs. Stephens Decl., ¶ 3, Exhibit 2. The IRS considers those payments to be income that Juarez must report as gross income on his tax returns. *See Rodriguez v. C.I.R.*, T.C. Memo 2001-36, *7 and 10 (2001) (FBI informant obligated to report payment of $100,000 as gross income where FBI made payment to award petitioner a share of the seized property, to compensate petitioner for his cooperation, and to defray any relocation expenses he had incurred). Thus, whether Juarez disclosed the payments he received from the FBI in his tax return is material to potentially impeaching Juarez's credibility by demonstrating that he may have committed tax violations for which he has not been prosecuted. *United States v. Blanco*, 392 F.3d 382, 392-94 (9th Cir. 2004) (reversing conviction where the government failed to disclose immigration benefits provided to its cooperating witness because those benefits were "highly relevant impeachment material").

In addition, Juarez received funds from both California Waste Solutions and Evolutionary Homes from 2022 to 2024, including payments for consulting work. As a result, his tax returns, and the tax returns for his company, Ciudad Holdings, from 2022 to present are relevant to assess how Juarez handled the tax treatment on those funds. If he appropriately handled the tax treatment on those funds, it bolsters the defense that those funds were allocated legally—particularly since the government has not pursued any civil or criminal tax charges related to those tax returns. If, however, Juarez did not handle the tax treatment properly, he will have received an undisclosed benefit from the government regarding his tax liabilities, and defendants should be permitted to confront him with that information to impeach his credibility. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the Constitution, through the Due Process Clause of the Fifth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment, guarantees defendants a meaningful opportunity to present a complete defense); *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine the bias of a government witness because the partiality of a witness is subject to exploration at trial and is always relevant to discrediting the witness).

The court in *United States v. Swenson*, No. 1:13-cr-00091, 2013 WL 4735591, at *1, 3 (D.

Idaho Sept. 3, 2013) encountered a similar issue and ordered production of tax returns, even where the government objected pursuant to the confidentiality provisions of 26 U.S.C. § 6103. In *Swenson,* the defendant sought tax returns from dozens of ***victims*** in the alleged fraud scheme—"twenty-five TIC purchasers who have submitted a victim impact statement." *Id.* at *3. The government objected, claiming, in part, that 26 U.S.C. § 6103 adopted a broad public policy of protecting taxpayer privacy—the privacy rights of the victim investors—which prohibited disclosure under Rule 16. *Id.* at *3. The court rejected the government's § 6103 argument and ordered the government to produce the tax return information of the victim investors. *Id.*

Here, Juarez is not a victim. Juarez is a cooperating defendant and the government's main witness against the defendants. The terms of Juarez's plea agreement do not provide Juarez any protection from prosecution for criminal tax violations. Stephens Decl., ¶ 4. Juarez also agreed to not commit any additional crimes, which would include criminal tax violations. *Id*. Juarez also has an express obligation under the terms of his plea agreement to provide the government with any documents the government requests from him—which would include Juarez's tax return information. *Id*. In other words, Juarez could not raise any privacy objection if the government simply asked him for copies of his tax returns. The government, however, refuses to ask Juarez for his tax returns.

In addition, the public policy considerations underlying the confidentiality provisions in § 6103 do not extend to Juarez. Congress enacted the taxpayer privacy provisions in § 6103 following the Watergate scandal during the Nixon Administration and Congress sought to prevent the Executive Branch from improperly snooping into the tax records of any individual on a President's "enemies list." *See Tax Analysts v. Internal Revenue Service*, 117 F.3d 607, 611 (D.C. Cir. 1997). Given that there is no evidence that Juarez is on any government "enemies list" and is not a victim in this case—like the taxpayers in *Swenson*—Juarez does not possess a significant privacy interest here. And Juarez certainly does not possess the type of privacy right needed to override the defendants' right to obtain Rule 16 discovery and their constitutional rights to due process, to present a complete defense at trial, and to confront their primary accuser.

### B. *Brady* Requires the Disclosure of Juarez's Tax Returns

#### 1. Juarez's Tax Returns Are Material Under *Brady.*

The due process clause of the Fifth Amendment requires prosecutors to disclose any evidence in the government's possession that is favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The good faith or bad faith of the prosecutor is irrelevant to the *Brady* analysis. *Id.* Evidence that would impeach a central prosecution witness, like Juarez, is indisputably favorable to the accused. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009).

The *Brady* information at issue needs to be material—the Supreme Court has stated that evidence qualifies as material when there is any reasonable likelihood that it could have affected the judgment of the jury. *Wearry v. Cain*, 577 U.S. 385, 392 (2016). The Ninth Circuit has held that *Brady* compliance is particularly acute where, like here, the government presents a witness who has been granted immunity from prosecution in exchange for his testimony. *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The Ninth Circuit stated that "criminals who are rewarded by the government for their testimony are inherently untrustworthy." *Id.* As a result, the Ninth Circuit "expects prosecutors and investigators to take all reasonable measures to safeguard the system against treachery." *Id.* quoting *United States v. Bernal-Obeso*, 989 F.2d 331, 333-34 (9th Cir. 1993). As to the prosecutors' *Giglio* obligations, the Ninth Circuit demands that prosecutors "turn over to the defense in discovery *all* material information casting a shadow on a government witness's credibility." *Id.* at 481-82 (emphasis in original).

The Ninth Circuit has previously determined that the government is obligated to disclose the tax liabilities of cooperating witnesses who testify against defendants at trial. In *United States v. Shaffer*, 789 F.2d 682, 688-89 (9th Cir. 1986), the defendant alleged, among other things, that the government had failed to disclose the status of a government witness's tax liability, an unindicted co-conspirator named Robert Durand. The evidence demonstrated that the government had not yet enforced Durand's civil tax liability for unpaid taxes. *Id.* at 689. The Court emphasized that "this lends further credence to the conclusion that Durand was paid in the form of leniency for his cooperation." *Id.* In affirming the district court's grant of a new trial, the

Ninth Circuit concluded that "the government's failure to disclose the impeachment evidence regarding Durand 'undermines confidence in the outcome of [Shaffer's] trial.'" *Id.* (citing *United States v. Bagley,* 473 U.S. 667, 677 (1985)). As a result, Juarez's tax returns qualify as material impeachment information under *Brady* and *Giglio* and must be produced. *See also*, *Blanco*, 392 F.3d at 392-94 (reversing conviction where government failed to disclose immigration benefits provided to cooperating witness because those benefits were "highly relevant impeachment material").

**2. The Government Has Knowledge of and Access to the Tax Returns.**

The government claims that it cannot produce Juarez's tax returns because it does not possess the documents. Stephens Decl., ¶ 7, Exhibit 4. The government does not assert that it has no inkling where the documents are located. Juarez's tax returns are stored in the IDRS database at IRS. Instead, the government claims that tax return information stored in the IDRS database somehow exists outside their knowledge and access—even though (1) IRS-CI is one of the lead investigative agencies on this matter, (2) an IRS-CI agent working a tax investigation can access the IDRS database with mere IRS-CI supervisor approval, (3) Juarez has agreed to provide the government with all documents they request, which would include the requested tax return information, and (4) defendants' constitutional rights to the information override any statutory privacy interest enumerated in 26 U.S.C. § 6103.

**a. The Government Has an Affirmative Duty to Seek Out and Produce Juarez's Tax Records.**

The Supreme Court and Ninth Circuit have repeatedly emphasized that the government cannot bury its head in the sand to avoid reviewing and producing *Brady* material to defendants in a timely manner. A prosecutor's constitutional obligations under *Brady* are self-executing—those obligations do not require a motion by the defense or an order of the Court to take effect. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1077 (D. Mont. (2005), and Rule 5(f) of the Federal Rules of Criminal Procedure. As such, a prosecutor has an affirmative duty to learn of any exculpatory evidence known to others acting on the prosecutor's behalf. *Id*. at 437. Because prosecutors are in a unique position to obtain

information known to other agents of the government, they may not be excused from disclosing what they do not know but could have learned. *Carriger*, 132 F.3d at 479-80. Just as it would undermine *Brady* to allow prosecutors to tell investigators not to give them certain materials unless they asked for them, it would equally undermine *Brady* for prosecutors to direct their investigators to perform an investigation and then fail to discover the investigation's full results. *Price*, 566 F.3d at 909 (citing *Blanco*, 392 F.3d at 388). The Ninth Circuit has emphasized that "the government cannot with its right hand say that it has nothing while its left hand holds what is of value." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). Put another way, "the government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant." *Id*.

In addition, the government must produce ***all*** *Brady* information in its control: prosecutors cannot satisfy their *Brady* obligations by merely disclosing some exculpatory evidence—such as the FBI's payments to Juarez—and then argue that the balance—such as Juarez's tax returns failing to disclose those payments as income—is cumulative. *Carriger*, 132 F.3d at 481-82.

**b. IRS-CI is on the Prosecution Team for *Brady* Purposes.**

Prosecutors are deemed to have knowledge and access to anything in the possession, custody, or control of any federal agency participating in the investigation of the defendant. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). It is undisputed that IRS-CI is a lead agency on this prosecution. As a result, it is undisputed that the prosecutors have possession, custody, and control of all documents and data at IRS-CI. *Id.* Here, Juarez's tax records are located in the IDRS database. Stephens Decl., ¶ 6. IRS-CI agents possess authorization to access tax records in the IDRS database on tax investigations—all they need to do is obtain the approval of a supervisor at IRS-CI. *Id*. Defense counsel specifically asked government counsel if they disagreed that IRS-CI agents had this type of access to documents and data stored in IDRS. *Id.* Government counsel did not dispute it. Stephens Decl., ¶ 7, Exhibit 4. As a result, Juarez's tax records fall inside the scope of the prosecutor's *Brady* obligations under a *Bryan* analysis.

**c. The Prosecutors Have Knowledge of and Access to Documents Stored at IRS.**

The government asserts that IRS-CI somehow exists outside of the IRS for *Brady* purposes such that the IRS cannot be considered part of the prosecution team under *Bryan*. The government further suggests, without providing any supporting evidence, that the documents at issue somehow exist outside the reach of IRS-CI. Even if that government assumption is true—and defendants contest the government's position—the Ninth Circuit still extends the government's *Brady* obligations to federal agencies beyond those on the prosecution team.

In *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995), the Ninth Circuit clarified that the scope of a prosecutor's *Brady* obligation extends beyond documents located at the investigating agencies on the prosecution team. The Court interpreted *Bryan* to mean that agency involvement in the investigation is a ***sufficient, but not necessary***, factor to show that the prosecution was in possession of the agency's information. *Id.* Instead, the Ninth Circuit held that the scope of the government's *Brady* obligation turns on the extent to which the prosecutor has ***knowledge of and access to*** the documents. *Id.* at 894.

For example, documents located at an agency that is not on the prosecution team—like IRS in the government's view of its *Brady* obligation here—are still deemed to be in the prosecutors' possession where the agency involved is "charged with administration of the statute allegedly violated and the agency consulted with the prosecutor in the steps leading to prosecution." *Wood*, 57 F.3d at 737 (Food and Drug Administration files found to be in the prosecution's possession for purposes of conspiracy prosecution pursuant to 18 U.S.C. § 371). Here, IRS is charged with the administration of at least two statutes charged in the indictment—18 U.S.C. §§ 371 and 1341. As stated in Section 6.4-110 of the Justice Manual, IRS-CI conducts "investigations into allegations of criminal violations arising under … provisions of Title 18, U.S.C. (e.g. 18 U.S.C. §§ 286, 287, 371, 1341)." Stephens Decl., ¶ 5, Exhibit 3. As a result, under *Wood*, the government's *Brady* obligations extend to the tax returns at issue given that the IRS is charged with the administration of alleged violations of Title 18 U.S.C. §§ 371 and 1341 and consulted with the prosecutors throughout this investigation.

In addition, other courts in the Ninth Circuit have held that documents located at the civil side of the investigating agency remain inside the prosecution's *Brady* obligations. *See, e.g.*, *United States v. Cutting*, No. 14-cr-00139, 2017 WL 132403, at *6-7 (N.D. Cal. 2017) (rejecting government's argument that the FDIC-Office of Inspector General operated separately from the FDIC-Receiver for purposes of determining the scope of the government's obligation to review millions of pages of documents at the FDIC-Receiver for *Brady* information); *United States v. Holmes*, No. 5:18-cr-00258, 2019 WL 5722573, at *2 (N.D. Cal. 2019) (rejecting government's argument that prosecutors lacked access to documents located at agencies—FDA and CMS—who are not part of the Department of Justice). In sum, this Court should reject the government's "right hand—left hand" argument—where the government is claiming that there is nothing more to disclose knowing that Juarez's tax returns are sitting at an agency involved in this prosecution. *Wood*, 57 F.3d at 737.

**d. Defendants' Constitutional Rights to Exculpatory Information Override the Government's Statutory Objection Pursuant to 26 U.S.C. Section 6103.**

Finally, the government claims that it cannot be forced to apply for a court order pursuant to 26 U.S.C. § 6103 to obtain Juarez' tax records. In other words, the government claims that the tax records are somehow outside of their knowledge and access because a statute that provides confidentiality over tax records in some circumstances may require the government to seek a court order to obtain discoverable evidence from one of its lead investigating agencies.

The Supreme Court rejected this argument in an analogous context. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 43 (1987), the defendant was charged with raping his 13-year-old daughter. The defendant sought to obtain records concerning his daughter from Children Youth Services ("CYS"), a protective state service agency, claiming that the documents "might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Id.* at 44. CYS refused to provide any documents claiming that a state statute protected the confidentiality of the rape victim's file. *Id.* at 43. The trial court agreed with CYS and refused to order production of the rape victim's file to the defendant. *Id.* at 44. On appeal, the Supreme Court balanced the confidentiality interests of the victim as expressed in the state statute against the defendant's due

process rights under the Fourteenth Amendment. *Id.* at 56.

The Pennsylvania statute did not prohibit disclosure in every instance—it permitted disclosure in certain limited situations, including when CYS is directed to disclose information by court order. *Id.* at 57-58. The Court emphasized that the statute did not prevent disclosure in criminal prosecutions because the Pennsylvania Legislature "contemplated *some* use of CYS records in judicial proceedings." *Id.* (emphasis in original). As a result, the Court held that the defendant's due process rights overrode the confidentiality of the state statute because the Court had "no reason to believe that the relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." *Id.*

Section 6103 is similar to the Pennsylvania statute in the most important respect—it does not mandate confidentiality in all situations and does permit disclosure in certain circumstances. *See* 26 U.S.C. § 6103(h); *United States v. Prokop*, No. 2:09-cr-00022, 2012 WL 2375001, at *3-6 (D. Nev. 2012) (discussing several circumstances where tax returns may be disclosed under § 6103, including judicial proceedings). As a result, consistent with *Ritchie,* this Court has the authority to order disclosure of Juarez's tax returns because defendants' due process rights under the Fifth Amendment outweigh Juarez's statutory privacy rights under Section 6103. Moreover, the public policy driving the protection of the privacy of an underage rape victim in *Ritchie* represents a far more significant privacy concern compared against Juarez's alleged privacy interest in his tax records, particularly given that (a) Juarez is obligated to provide his tax records to the prosecutors if they simply asked him for the material, and (b) Juarez is not on any "enemies list" at the Executive Branch.

In addition, another circuit reversed convictions on *Brady* grounds where the trial court had refused to order production of tax records because the government had objected pursuant to § 6103—the same argument the government makes here. In *United States v. Lloyd*, 71 F.3d 408, 409 (D.C. Cir. 1995), the defendant sought to obtain tax records from government witnesses to support his theory of defense—that his clients, not himself, had supplied false information in their tax records. The court conducted a *Brady* analysis and reversed the defendant's convictions on

various counts because the defendant may have been able to use the withheld information to impeach his accusers. *Id.* at 411-13. In short, the government's § 6103 argument fails because defendants' constitutional rights take priority over any confidentiality interest expressed in the statute.

Moreover, the IRS Manual acknowledges that the government's obligation to produce *Brady* evidence preempts the confidentiality of tax returns expressed in § 6103. In Section 11.3.1.1.2 of the IRS Manual, the IRS states that "the primary law governing the authority for disclosure of federal tax information is 26 USC 6103." Stephens Decl., ¶ 10, Exhibit 7. But the IRS then identifies a series of "constitutional preemptions" to Section 6103 and states "[t]he US Constitution may mandate disclosure when a criminal defendant has a right to obtain exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83 (1963). The IRS can be required, when the Government is under a constitutional obligation to disclose, upon the defendant's request, evidentiary material either to guilt or punishment (exculpatory evidence)." *Id.* In other words, the IRS agrees with the Supreme Court's analysis in *Ritchie* and the D.C. Circuit's ruling in *Lloyd* by expressly recognizing that a defendant's constitutional right to due process via *Brady* preempts the confidentiality provisions in Section 6103.

In addition, the government cannot claim that any perceived administrative burden involved in obtaining Juarez's tax returns somehow outweighs defendants' constitutional rights. Courts have routinely held that a prosecutor's obligation to seek out exculpatory evidence in the government's possession is not tempered by considerations of reasonableness or undue burden. *W.R. Grace*, 401 F. Supp.2d at 1076; *United States v. McVeigh,* 954 F. Supp. 1441, 1450 (D. Colo. 1997) (the failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance, or delay). Finally, the government cannot claim the defense should have brought this motion sooner because a prosecutor's *Brady* obligation is self-executing, the Court issued a Rule 5(f) order on January 17, 2025, and defense counsel requested Rule 16 and exculpatory evidence on January 21, 2025. *See Kyles*, 514 U.S. at 433; ECF 12; Stephens Decl., ¶ 8, Exhibit 5. Thus, both the delay here and the obligation to timely provide this information to defense counsel fall squarely on the government.

*United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (the government must disclose *Brady* material sufficiently in advance of trial as to be of value to the accused).

## IV. CONCLUSION

For the reasons stated above, David Duong respectfully requests that the Court enter an order compelling the government to produce the tax records of Mario Juarez and Ciudad Holdings from 2022 to present.

Dated: September 28, 2026

JONES DAY

By: */s/ Neal J. Stephens*
Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong