Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendant. | Case No. CR 25-0003 YGR<br><br>**NOTICE AND MOTION FOR PRODUCTION OF MARIO JUAREZ DOCUMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: October 21, 2026<br>Time: 8 a.m.<br>Court: 1, 4th Floor |

**NOTICE**

PLEASE TAKE NOTICE that on October 21, 2026, or as soon as the matter may be heard before the Honorable Yvonne Gonzalez Rogers, that defendant David Duong will and hereby does move the Court for an order seeking the production of emails of Mario Juarez that the government obtained from Microsoft and Apple. Counsel for the remaining defendants have confirmed to counsel for Mr. Duong that the other defendants will join this motion. This motion is based on Rule 5(f) and Rule 16 of the Federal Rules of Criminal Procedure, the Fifth and Sixth Amendments to the United States Constitution and the government's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).

Dated: October 7, 2026

JONES DAY

By: */s/ Neal J. Stephens*
Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The October 5, 2026 Hearing ..... 2

B. Search Warrants ..... 3

C. Government's Physical Retention of Juarez Emails ..... 4

D. Government's Recent Discovery of Withheld Juarez Emails and Proposed Solution ..... 4

E. Recent Events ..... 5

III. ARGUMENT ..... 6

A. The Juarez Emails Contain Rule 16 and *Brady/Giglio* Material ..... 6

B. The Government Has Knowledge of and Access to the Juarez Emails ..... 7

C. Juarez Has No Expectation of Privacy in His Emails ..... 10

D. There Are No Competing Interests That Outweigh Defendants' Constitutional Right to Juarez's Emails ..... 10

1. There Is No Undue Burden on the Government. ..... 10

2. Defendants' Motion is Timely. ..... 11

IV. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

Page

CASES

*Carriger v. Stewart*,
132 F.3d 463 (9th Cir. 1997) (en banc) ..... 7

*Crane v. Kentucky*,
476 U.S. 683 (1986) ..... 7

*Davis v. Alaska*,
415 U.S. 308 (1974) ..... 7

*Giglio v. United States*,
405 U.S. 150 (1972) ..... 7

*Kyles v. Whitley*,
514 U.S. 419 (1995) ..... 6, 11

*United States v. Aichele*,
941 F.2d 761 (9th Cir. 1991) ..... 11

*United States v. Balwani*,
2022 WL 1405404 (N.D. Cal. May 4, 2022) ..... 9

*United States v. Bernal-Obeso*,
989 F.2d 331 (9th Cir. 1993) ..... 7

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989) ..... 8

*United States v. Cerna*,
633 F. Supp. 2d 1053 (N.D. Cal. 2009) ..... 9

*United States v. Collins*,
409 F. Supp. 3d 228 (S.D.N.Y. 2019) ..... 10

*United States v. Dadd*,
1992 WL 107356 (9th Cir. 1992) ..... 10

*United States v. Doe*,
705 F.3d 1134 (9th Cir. 2013) ..... 6

*United States v. Hernandez-Meza*,
720 F.3d 760 (9th Cir. 2013)........................................................................................ 6

*United States v. McVeigh*,
954 F. Supp. 1441 (D. Colo. 1997) ............................................................................ 11

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009)........................................................................................ 7

*United States v. Rubio*,
727 F.2d 786 (9th Cir. 1983)...................................................................................... 10

*United States v. Santiago*,
46 F.3d 885 (9th Cir. 1995).......................................................................................... 8

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995).......................................................................................... 8

*United States v. W.R. Grace*,
401 F. Supp. 2d 1069 (D. Mont. 2005) ................................................................... 6, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendants request an order compelling the government to immediately produce the non-privileged emails that it seized, searched, and continues to possess related to Mario Juarez's email accounts at Microsoft and Apple (the "Juarez Emails"). Defendants seek this relief pursuant to their Fifth Amendment right to due process, Sixth Amendment rights to confront their primary accuser, Mario Juarez, and to present a complete defense, as well as their right to discovery under Rules 5(f) and 16 of the Federal Rules of Criminal Procedure.

As will be demonstrated below, there are no competing privacy rights in the non-privileged Juarez Emails. Juarez began cooperating with the government in approximately May/June 2024. Juarez subsequently pled guilty on January 7, 2025. In his plea agreement, Juarez agreed to provide the government with all documents and other material asked for by the government. The government admits that it received the emails from Juarez's Microsoft account on November 7, 2024 and continued to review those emails until August 12, 2025—long after Juarez began cooperating and had waived any privacy rights in the Juarez Emails. Declaration of Neal Stephens ("Stephens Decl."), ¶ 2, Exhibit 1. Similarly, as to Juarez's Apple emails, the FBI was reviewing Juarez's Apple emails after Juarez pled guilty. An FBI 302 details that the FBI completed review of Juarez's Apple iCloud account (excluding Apple notes) on May 30, 2025 and completed its review of the Apple notes on August 27, 2025. Stephens Decl., ¶ 3, Exhibit 2. As a result, Juarez waived any privacy rights in the non-privileged Juarez Emails by effectively consenting to the government's continued possession and review of the Juarez Emails.

There is no other public policy or competing privacy interest that overrides defendants' constitutional rights to the Juarez Emails. The government cannot claim any undue burden given that the material implicates defendants' right to receive exculpatory evidence and the government can simply transfer the non-privileged Juarez Emails to the defendants. Likewise, the government cannot raise any timeliness challenge because its constitutional obligations to produce exculpatory evidence are self-executing—those obligations do not require a motion by the defense or an order of the Court to take effect.

Finally, defendants do not need to show—nor do they assert—bad faith by the government because the good or bad faith of the government is irrelevant under *Brady/Giglio*.

## II. FACTUAL BACKGROUND

### A. The October 5, 2026 Hearing

At the hearing on October 5, 2026, defense counsel raised its concern about the government's proposed methodology to search approximately 15,000 emails from Juarez's Microsoft email address that had mistakenly not been reviewed by the government after a preliminary privilege review was performed. Specifically, the defense was concerned that the government's initial proposal to search the emails for approximately sixteen names and ten other terms suggested that its review of the balance of Mario Juarez's other 185,000 seized emails from his Microsoft email address may not have sufficiently satisfied the government's obligations under Rule 16 and *Brady/Giglio*. The parties' interests should be aligned here: no one benefits from the defense not receiving an adequate Rule 16 and *Brady*/*Giglio* disclosure from the government at trial, which could affect the fairness of the trial and unnecessarily create an appellate issue that can be avoided.

A threshold factual question is what emails the government "possessed" when it subpoenaed and received 200,000 Juarez Emails. The government suggested that the Court adopt a legal fiction that even though the government seized and physically possesses all of Juarez Emails, for the purposes of *Brady*/*Giglio* and Rule 16, it only ever "possessed" the emails that fell within the scope of Attachment B to the search warrant. The government and Court discussed the significance of the fact that one of the warrants was issued back in May 2024; this date was eight months before the Indictment was returned and when Mario Juarez pled guilty pursuant to a cooperation agreement. Stephens Decl., ¶ 4, Exhibit 3 at 26:13-27:9.

But in fact, the government has since disclosed that it continued to review and search those 200,000 Juarez Emails from Juarez's Microsoft account until almost a year ago, long past when defendants were indicted and Juarez pled, during the time when the government was interviewing and reinterviewing dozens of potential witnesses. Stephens Decl., ¶¶ 2-3, Exhibits 1-2. The government has acknowledged that during this extended period of time, one or more

agents used any number of approaches to review documents, and that such review was "iterative," meaning that the government believed that it was permitted to go back repeatedly and as many times as it chose based on what it was learning in its investigation, until August 2025. Stephens Decl., ¶ 2, Exhibit 1. There is also no dispute that the government seized and physically possessed all of the Microsoft emails, and the government has disclosed that the FBI continues to retain a physical copy of all of the emails. *Id.*

The defense requests that the Court order the government to turn over the balance of the non-privileged Juarez Emails, which the government still physically possesses, so that the defense can review the materials for relevant and exculpatory evidence. This is the approach recommended in the Department of Justice Manual to avoid exactly this kind of situation. Section 9-5.0002 of the Justice Manual states "[g]enerally, all evidence and information gathered during the investigation should be reviewed, including anything obtained during searches or via subpoenas, etc." Stephens Decl., ¶ 5, Exhibit 4. The Justice Manual also encourages prosecutors to agree to what the defense proposes here—provide the non-privileged emails in the Juarez Emails to the defense to review. The Justice Manual states "[i]n cases involving voluminous evidence obtained from third parties, prosecutors should consider providing defense access to the voluminous documents to avoid the possibility that a well-intentioned review process nonetheless fails to identify material discoverable evidence." *Id.*

**B. Search Warrants**

On February 24, 2024, Magistrate Judge Westmore signed a search warrant to Apple Inc. for information associated with Juarez's Apple email account. On May 7, 2024, Magistrate Judge Ryu signed a search warrant to Microsoft Corporation for information associated with Juarez's email address.

According to the government:

> The search warrant for Mario Juarez's email account was signed on May 7, 2024, and served on Microsoft two days later. Due to delays on the part of Microsoft, and after a series of technical issues with the transmission of the data from Microsoft to the FBI, the full dataset as ordered in the warrant was not provided to the government until November 7, 2024. That dataset then went to the government's filter team to conduct an initial filter review, after which the filtered

> dataset was provided to the prosecution team. ***An FBI case agent conducting the Attachment B review, to determine which materials were within the scope of the warrant and lawfully seized by the government, completed the review on August 12, 2025.*** The case agent primarily responsible for the review of the Mario Juarez emails used a variety of approaches to review the documents pursuant to the warrant. The Attachment B review was comprehensive and was done based on an iterative process using a combination of search terms based on the warrant categories, searches for relevant individuals, entities, email addresses and phone numbers, and significant manual review. This review was based on the specific items that the government was allowed to seize as set forth in Attachment B.

Stephens Decl., ¶ 2, Exhibit 1. Further, Agent Richins' March 16, 2026 302 corroborates that the FBI was reviewing Juarez's Microsoft emails through August 7, 2025. Stephens Decl., ¶ 6, Exhibit 5. In addition, the government used a similar process for Juarez's Apple email, as described in Agent Haunold's September 2, 2025 FBI 302. Stephens Decl., ¶ 3, Exhibit 2.

**C. Government's Physical Retention of Juarez Emails**

In response to the defense's question, the government indicated that it did not believe that a search warrant return was ever filed and would do that in the future if it had not. Stephens Decl., ¶ 2, Exhibit 1. The government indicated that documents were provided from the FBI's review platform to the U.S. Attorney's Office in August 2025. *Id.* The "full dataset" of the Juarez's Microsoft emails has remained stored on the FBI's internal system during the past year except for when the 15,000 emails that had not been reviewed were recently retrieved from the "dataset" held by the FBI. *Id.*

**D. Government's Recent Discovery of Withheld Juarez Emails and Proposed Solution**

As previously raised with the Court, the government recently discovered that some of the subpoenaed email accounts and/or seized devices of three individuals had not been properly reviewed by the government in order to make discovery productions to the defense. For example, the government had mistakenly not reviewed approximately 14,485 emails, attachments, and associated files out of the more than 200,000 emails and attachments obtained from Microsoft.

On October 1, 2026, the government informed the defense via email of the process it intended to follow to address the issue, including that it would identify the search warrant returns

that will need further review, and set forth our proposed plan to complete this review. The parties met and conferred, with the defense proposing a much larger number of proposed search terms, without waiving its right to have the government perform its requisite review.

**E. Recent Events**

While the government invited the defense to add any search terms, the defense could not understand how or why the government believed it could discharge its obligations with the limited search terms it proposed. The defense requested that the government clarify whether the search terms listed in its proposal were the same terms the government had used in the prior review process. The government responded that the agent reviewing Juarez's email account did not use a specific set of search terms, but used terms and topics set forth in Attachment B of the warrant to identify materials that were within the scope of the warrant adding that there was no requirement to use search terms to review electronic evidence.

The government also explained that the platforms it used to review emails generally do not have the ability to directly enter search terms with limiters of "/x" for within a number of words, or Boolean expanders like "!", but that it would attempt to adapt. The government stated that its proposal was an attempt to review the material quickly. On October 4, 2026, the defense asked the government to please let the defense know if reviewing agents made individual decisions to employ various search terms to do a relevance review and whether there were any agreed upon parameters or requirements for searches, as well as whether there was any record of what terms were used.

That night, the government sent the defense a letter that it copied to the Court. The parties appeared before the Court on October 5, 2026, at which point the defense raised and the Court considered the issue. The main issue that was discussed was whether the government "possessed" the balance of the 200,000 emails seized from Juarez such that the government had any continuing discovery obligations with respect to those documents.

In response to further questions from the defense, the government sent the defense another letter on October 6, 2026. Stephens Decl., ¶ 2, Exhibit 1. The government wrote that at the hearing, the defense suggested that the initial Attachment B review of Juarez's email account was

based either only on search terms the government provided to the defense via email on October 1, 2026, or was not based on search terms at all. *Id*. To be clear, that was not the defense's argument. When the Court asked if the defense was arguing that the government had not been zealous enough to get information from devices, the defense replied that it did not know, and argued later that "[t]he truth is we don't know what they did." Stephens Decl., ¶ 4, Exhibit 3 at 29:5-15 and 35:7-24. What the defense did argue was that the government's proposal of a very small number of names and terms in October 2026, which did not include people of obvious interest to the defense as well as any terms connected to other fraud that it appears Juarez committed, gave rise to a serious concern that the government's prior review may not have been adequate. Stephens Decl., ¶ 4, Exhibit 3 at 28:13-17 and 42:13-43:3.

## III. ARGUMENT

### A. The Juarez Emails Contain Rule 16 and *Brady/Giglio* Material

Pursuant to Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure, the government is obligated to produce documents that are material to preparing the defense. Materiality is a "low threshold"—it is satisfied so long as the information in the Juarez Emails will help defendants prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). "Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *Id.*, citing *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013). Rule 16 also covers a broader scope of discovery than the government's Brady obligations because information that is not exculpatory or impeaching may still be relevant to developing a possible defense. *Doe*, 705 F.3d at 1151.

As to *Brady/Giglio*, a prosecutor's constitutional obligations to produce exculpatory evidence are self-executing—those obligations do not require a motion by the defense or an order of the Court to take effect. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1077 (D. Mont. (2005)). As such, a prosecutor has an affirmative duty to learn of any exculpatory evidence known to others acting on the prosecutor's behalf. *Kyles,* 514 U.S. at 437. Because prosecutors are in a unique position to obtain information known to other agents of the government, they may not be excused from disclosing what they do not

know but could have learned. *Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (en banc). The government must also produce all *Brady* information in its control: prosecutors cannot satisfy their *Brady* obligations by merely disclosing some exculpatory evidence and then argue that the balance is cumulative. *Carriger*, 132 F.3d at 481-82.

The Ninth Circuit has held that *Brady* compliance is particularly acute where, like here, the government presents a witness who has been granted immunity from prosecution in exchange for his testimony. *Carriger*, 132 F.3d at 479. The Ninth Circuit stated that "criminals who are rewarded by the government for their testimony are inherently untrustworthy." *Id*. As a result, the Ninth Circuit "expect[s] prosecutors and investigators to take all reasonable measures to safeguard the system against treachery." *Id. quoting United States v. Bernal-Obeso*, 989 F.2d 331, 333-34 (9th Cir. 1993). As to the prosecutors' *Giglio* obligations, the Ninth Circuit demands that prosecutors "turn over to the defense in discovery all material information casting a shadow on a government witness's credibility." *Id*. at 481-82 (emphasis in original).

Here, the Juarez Emails are material for both Rule 16 and *Brady/Giglio* purposes because evidence that would impeach a central prosecution witness, like Juarez, is indisputably favorable to the accused. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009). Juarez communicated over email with the defendants and also communicated with others about the defendants. As such, information in the Juarez Emails that the government has not produced to date is discoverable and needs to be disclosed. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the Constitution, through the Due Process Clause of the Fifth Amendment and the Compulsory Process and Confrontation Clauses of the Sixth Amendment, guarantees defendants a meaningful opportunity to present a complete defense); *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine the bias of a government witness because the partiality of a witness is subject to exploration at trial and is always relevant to discrediting the witness).

**B. The Government Has Knowledge of and Access to the Juarez Emails**

For purposes of the government's obligations under *Brady* and its progeny, there is no

meaningful distinction between "seized" and "non-seized" material. Here, the government continued to access and review Attachment A material through August 2025 as they continued working on their Attachment B review, months after Juarez had pled guilty in January 2025 and abandoned any expectation of privacy in the Juarez Emails.

Prosecutors are deemed to have knowledge and access to anything in the possession, custody, or control of any federal agency participating in the investigation of the defendant. *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). In *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995), the Ninth Circuit clarified that the scope of a prosecutor's *Brady* obligation extends beyond documents located at the investigating agencies on the prosecution team. The Court interpreted *Bryan* to mean that agency involvement in the investigation is a sufficient, but not necessary, factor to show that the prosecution was in possession of the agency's information. *Id*. Instead, the Ninth Circuit held that the scope of the government's *Brady* obligation turns on the extent to which the prosecutor has knowledge of and access to the documents. *Id.* at 894.

Just as it would undermine *Brady* to allow prosecutors to tell investigators not to give them certain materials unless they asked for them, it would equally undermine *Brady* for prosecutors to direct their investigators to perform an investigation and then fail to discover the investigation's full results. *Price*, 566 F.3d at 909.

The Ninth Circuit has emphasized that "[t]he government cannot with its right hand say that it has nothing while its left hand holds what is of value." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995). Put another way, "the government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant." *Id*.

Here, the government has acknowledged that the FBI continues to possess the Juarez Emails. For example, in its October 6, 2026 letter regarding the Juarez Emails seized from Microsoft, the government acknowledged that "the full dataset is still stored on the FBI's internal system." Stephens Decl., ¶ 2, Exhibit 1. In addition, as demonstrated above, the government also continued to access Juarez's seized materials after Juarez pled guilty on January 7, 2025 through

August 2025. In other words, the government has been accessing and reviewing the Juarez Emails for inculpatory evidence long after Juarez pled guilty and waived any privacy right he had in his emails. When the government was continuing to search for inculpatory evidence throughout the Juarez Emails, it had a duty to also identify all exculpatory evidence for production to the defendants. As stated by Judge Alsup in *United States v. Cerna,* 633 F.Supp. 2d 1053, 1060 (N.D. Cal. (2009)),

> ***When state police gives a federal investigator access to its files for the purpose of pulling items of interest to a federal investigation, Brady requires that the prosecution team review as well for Brady materials within the same universe of files.*** In this instance, separate sovereignty no longer matters. The reason is that the state has invited the federal authorities into its file room and given access to the evidence. ***Once inside the stacks with permission to rummage about for prosecution evidence, the federal authorities must search for and retrieve defense evidence bearing on the same question.*** The same would hold if the access is only by mere requests, i.e., if the local police allow the federal prosecutor to make written or verbal requests for records searches to be conducted by local officers, then the federal prosecutor must ask for all information on the same subject, pro and con. This arises not because there is "agency" but because the federal prosecution team is given free access to retrieve information and the search must be even-handed as to the point of inquiry." *United States v. Cerna*, No. CR 08-0730 WHA, 2009 WL 10823687, at *9 (N.D. Cal. (Oct. 5, 2009)). (Emphasis added).

Given the reasoning in *Cerna*, the government cannot now suggest that running its own search terms against this dataset complies with their constitutional obligations to timely identify and disclose all exculpatory evidence to defendants.

The government relies on cases in its October 6, 2025 letter that are distinguishable. In *United States v. Balwani*, No. 5:18-CR-00258-EJD-2, 2022 WL 1405404, at *5 (N.D. Cal. May 4, 2022), the dispute related to whether the government had to search approximately 20 terabytes of data for exculpatory evidence that the government had never reviewed. The court stated that "the Government was not authorized to seize it, much less retain it, review it, or offer it up …" Thus, the court held that because the Government never had a lawful right to maintain possession, custody, or control over the non-responsive 21TB, it could not have been under an obligation to review or turn over that data to the defense as potential *Brady* material." *Id.* Here, by contrast, the agents did review Attachment A as demonstrated by the statements in the government's

October 6, 2026 letter. Stephens Decl., ¶ 2, Exhibit 1.

In *United States v. Collins*, 409 F. Supp. 3d 228, 243 (S.D.N.Y. 2019), the court based its holding on two facts that do not exist here. First, the defendant provided no evidence that the government's *Brady* review was deficient. Here, this issue arose during a meet and confer after defense counsel identified discrepancies with the production of material from Juarez's Microsoft email account. Second, the court in *Collins* emphasized that the third party whose email was subject to review was objecting based on their Fourth Amendment rights. *Id.* at 244. That concern does not exist for the reasons stated below.

**C. Juarez Has No Expectation of Privacy in His Emails**

Juarez has no expectation of privacy in his emails. Juarez began cooperating with the government in approximately May/June 2024 and entered his guilty plea on January 7, 2025. The parties do not dispute that, as part of his plea agreement, Juarez agreed to provide the government with all documents and other material asked for by the government. As noted above, the government's review of the Juarez Emails continued after Juarez pled guilty. Thus, he consented to the government's ongoing review and current possession of his emails when he pled guilty. "Once consent has been obtained from one with authority to give it, any expectation of privacy has been lost." *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983); *United States v. Dadd*, 1992 WL 107356, at *6 (9th Cir. 1992) ("Once consent to search is given, there is no reasonable expectation of privacy in the area to be searched and a later search is valid." ).

As a result, the only constitutional rights at issue in this motion are defendants' constitutional rights to due process, to confront their primary accuser, and to present a complete defense to the jury.

**D. There Are No Competing Interests That Outweigh Defendants' Constitutional Right to Juarez's Emails**

**1. There Is No Undue Burden on the Government.**

The government may claim that defendants' motion imposes some undue burden on it. That argument is not persuasive for two reasons. First, courts have routinely held that a prosecutor's obligation to seek out exculpatory evidence in the government's possession is not

tempered by considerations of reasonableness or undue burden. *W.R. Grace*, 401 F. Supp.2d at 1076; *United States v. McVeigh*, 954 F. Supp. 1441, 1450 (D. Colo. 1997) (the failure to comply with a constitutional command to present evidence fairly at trial is not excused by any inconvenience, expense, annoyance, or delay). Second, defendants' suggested relief is that the government simply transfer the non-privileged Juarez Emails to the defendants.

**2. Defendants' Motion is Timely.**

Based on their comments in the meet and confer, the government may attempt to claim that defendants' motion is untimely. That fails for three reasons. First, defendants just learned about the discrepancy in the emails the government obtained from Microsoft and immediately began a meet and confer with the government that promptly led to this motion. Second, as to *Brady/Giglio*, a prosecutor's constitutional obligations to produce exculpatory evidence are self-executing—those obligations do not require a motion by the defense or an order of the Court to take effect. *Kyles*, 514 U.S. at 437; *W.R. Grace*, 401 F. Supp. 2d at 1077 (D. Mont. 2005). The Court also entered a Rule 5(f) order when the defendants were arraigned in January 2025. Finally, the government must disclose *Brady* material sufficiently in advance of trial as to be of value to the accused. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991). Trial starts on October 13, 2026. The government has refused to produce the Juarez Emails, thereby putting the defendants in a precarious position given the pending trial, and the defendants are not waiving any of their constitutional rights by trying to work out a resolution with the government.

## IV. CONCLUSION

For the reasons stated above, defendants respectfully request that the Court enter an order compelling the government to immediately produce the Juarez Emails.

Dated: October 7, 2026

JONES DAY

By: */s/ Neal J. Stephens*
Edward W. Swanson
August Gugelmann
SWANSON &McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong