# EXHIBIT A

Edward W. Swanson (SBN 159859)
August P. Gugelmann (SBN 240544)
SWANSON & McNAMARA LLP
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9100
Email: ed@smllp.law
Email: august@smllp.law

Neal J. Stephens (SBN 152071)
Jeffrey B. Schenk (SBN 234355)
Thao Donnelly (SBN 355632)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
Email: nstephens@jonesday.com
Email: jbschenk@jonesday.com
Email: tdonnelly@jonesday.com

Attorneys for Defendant
DAVID TRUNG DUONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHENG THAO, et al.,<br><br>Defendants. | Case No. CR 25-0003 YGR<br><br>**REPLY IN SUPPORT OF MOTION FOR PRODUCTION OF MARIO JUAREZ DOCUMENTS** |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The government's opposition hinges on whether or not Mario Juarez waived his Fourth Amendment rights when he entered his plea agreement on January 7, 2025. ECF 406 at 9-10. The government claims that defendants' motion represents a "radical reinterpretation of the Fourth Amendment and settled case law" by arguing that "by pleading guilty, Juarez somehow waived any Fourth Amendment privacy interest he had in these materials." *Id.* at 1:18-21. The government asserts that "defendants try to avoid the requirements of the Fourth Amendment and centuries of case law by claiming that Juarez somehow has no privacy interest in the iCloud and email data because by entering into a cooperation plea agreement, he waived any privacy interests in the data." *Id.* at 9:20-22. The government argues that "***there is nothing in the law or the Plea Agreement that supports this tortured proposition***." *Id.* at 9:24-25. Finally, the government concludes by claiming that "the truth is that Juarez has not waived his Fourth Amendment rights nor consented to the warrantless search of his iCloud or email data." *Id.* at 10:3-4.

Juarez's plea agreement, however, states just the opposite. In his plea agreement, Juarez expressly ***agrees to give up his rights to move to suppress evidence and raise other Fourth Amendment claims***. Reply Declaration of Neal Stephens ("Stephens Reply Declaration"), ¶ 2, Exhibit 1 at 6:23-25. Further, Juarez promised that he will provide all documents and other material asked for by the government. *Id.,* Exhibit 1 at 8:4-10. In short, Juarez abandoned any expectation of privacy in the Juarez Emails by waiving his Fourth Amendment rights in his plea agreement.

## II. RELEVANT CHRONOLOGY

At the hearing on a separate *Brady/Giglio* motion related to Juarez's tax returns, the Court inquired about the relevant time line regarding the facts related to this motion. The timeline demonstrates that—for months after Juarez pled guilty on January 7, 2025 and waived any expectation of privacy in the Juarez Emails—the government continued reviewing Attachment A materials as it was gathering its Attachment B material for the Microsoft email warrant and the

second Apple iCloud warrant. Here is that timeline.

- July 24, 2023 – the government seeks the first Apple iCloud warrant. (ECF 406-1, Exhibit A).

- February 23, 2024 – the government seeks the second Apple iCloud warrant. (ECF 406-1, Exhibit B).

- May 7, 2024 – the government seeks the Microsoft email warrant. (ECF 406-1, Exhibit C).

- Late May/early June 2024 – Juarez begins to cooperate with the government.

- November 5, 2024 – the government finishes its search and review of the Attachment A materials for the first Apple iCloud warrant thereby finalizing its selection of the Attachment B materials for the first Apple warrant. ECF 406 at 5:19-21.

- ***January 7, 2025 – Juarez pleads guilty, waives his Fourth Amendment rights, and also agrees to provide the government will all documents it requests.*** (Stephens Reply Declaration, Exhibit 1).

- May 30, 2025 – the government finishes its search and review of the Attachment A materials for the second Apple iCloud warrant thereby finalizing its selection of the Attachment B materials (except for the review of all Apple notes). ECF 406 at 5:21-23.

- August 12, 2025 – the government finishes its search and review of the Attachment A materials for Juarez's Microsoft email account thereby finalizing its selection of the Attachment B materials. ECF 406 at 4:18-5:1.

- August 27, 2025 – the government finishes its search and review of the Apple notes in the Attachment A material for the second Apple iCloud warrant thereby finalizing its selection of the Apple notes it designated as Attachment B material.

- October 7, 2026 – Defendants file their Motion for Production of Mario Juarez documents.

- October 8, 2026 – the government files its opposition.

- October 12, 2026– the government informs Defendants that the government "reached out to counsel for Juarez to ask whether he would consent to all non-privileged emails in that newly-released set (of approximately 11,000 emails + attachments) being produced to defense counsel without the government conducting Attachment B review" and "Juarez's counsel responded that Juarez did not consent to such a production." (Stephens Reply Declaration, ¶ 3, Exhibit 2).

## III. ARGUMENT

To establish that Juarez has a reasonable expectation of privacy in the Juarez emails, the government has to show: (1) that Juarez has an actual (subjective) expectation of privacy, and (2) that his subjective expectation is objectively reasonable, i.e., that it is an expectation that society is prepared to recognize as reasonable. *United States v. Fisher,* 56 F. 4th 673, 686 (9th Cir. 2022). In *Fisher*, the Ninth Circuit held that the defendant abandoned his expectation of privacy in a cell phone and two portable drives that he had left behind when he moved out of his former residence. *Id.* at 681, 688. The court emphasized that an individual may abandon his expectation of privacy in response to, or in anticipation of, law enforcement action. *Id.* at 687.

Here, the totality of circumstances surrounding Juarez's consent demonstrates that Juarez voluntarily waived any expectation of privacy he had in the Juarez Emails when he elected to plead guilty on January 7, 2025. Juarez cannot claim that his waiver and consent were coerced. At his plea hearing, Juarez was represented by prominent and highly experienced criminal defense counsel from Paul Weiss. In addition, Juarez was not handcuffed, nor was he in custody, nor did any law enforcement agents have weapons drawn on him. Instead, Juarez knowingly and voluntarily waived his rights to move to suppress evidence or raise other Fourth Amendment challenges. Stephens Reply Decl., ¶ 2, Exhibit 1 at 6:23-25. Juarez also expressly consented to provide the government with any documents it requested. *Id.,* Exhibit 1 at 8:4-10. On more coercive facts than appear here, the Ninth Circuit has repeatedly held that an individual has voluntarily consented and thereby has no reasonable expectation of privacy in the material reviewed. *See, United States v. Basher*, 629 F. 3d 1161, 1168 (9th Cir. 2011) (consent to search freely and intelligently given where defendant merely nodded his head to his son to retrieve a shotgun); *United States v. Garcia*, 997 F. 2d 1273, 1281-82 (9th Cir. 1993) (consent deemed voluntary when officers tricked defendant into opening door and defendant stepped back into house where officers found guns and drugs).

In short, Juarez cannot claim that he has any subjective expectation of privacy in the Juarez Emails because his plea agreement demonstrates that he knowingly and voluntarily waived

his Fourth Amendment rights. Stephens Reply Decl., ¶ 2, Exhibit 1 at 6:23-25. In addition, Juarez has no objective expectation of privacy in the Juarez Emails because society would reasonably expect that an individual who knowingly and voluntarily waives his Fourth Amendment rights to receive a potential reduced sentence should not be allowed to back out of that waiver when it no longer suits him—and while he still pursues a potential reduced sentence.

In addition, the government cannot argue that Juarez cannot waive constitutional rights in a plea agreement—a routine occurrence in cooperation plea agreements throughout the country. In *United States v. Barnett,* 415 F.3d 690, 691 (7th Cir. 2005), the court reiterated that constitutional rights, including Fourth Amendment rights, can be waived where the waiver is knowing and voluntary. The court emphasized that "nothing is more common that an individual's consenting to a search that would otherwise violate the Fourth Amendment, thinking he will be better off than he would be standing on his rights. Often a big part of the value of a right is what one can get in exchange for giving it up." *Id.* at 692. Here, like the defendant in *Barnett,* Juarez opted to abandon his Fourth Amendment rights to try to obtain a more lenient sentence. So the government and Juarez cannot now claim that Juarez has not waived his Fourth Amendment rights to avoid providing *Brady/Giglio* information to the defendants.

Given Juarez's Fourth Amendment waiver, the only constitutional rights at issue belong to defendants—their Fifth Amendment right to due process regarding the government's obligation to produce exculpatory evidence and their Sixth Amendment rights to confront their primary accuser and present a complete defense. Thus, public policy weighs in favor of disclosure, not suppression. Indeed, the government's *Brady/Giglio* argument invites potential reversible error—if there is a *Brady/Giglio* violation regarding the Juarez Emails, there is no harmless error analysis on appeal to try to remedy the issue short of remand back to the trial court. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) ("once a reviewing court applying *Bagley* has found constitutional error there is no need for further harmless error analysis").

The government attempts to argue that it does not possess the Juarez Emails but their opposition demonstrates that agents continued to access and review Attachment A material long

after Juarez pled guilty in January 2025. ECF 406 at 4:1-5:25. The government admits that it has authority to review every single file in the collected data sets (i.e. the Attachment A material) to determine if a particular file is responsive. *Id.* at 4, fn. 1 and 7:21-22. In other words, agents were actively reviewing Attachment A material as they were assessing what information they wanted to place into Attachment B. Thus, the government is quite aware of the contents of Attachment A material because it was in their hands and on their computer screens as they read it. As a result, the government cannot now claim that it has no obligation to produce this information pursuant to their *Brady/Giglio* obligations by claiming that it did not possess it and was not aware of it. *Id.* at 7:27-8:2, citing *United States v. Cano,* 934 F.3d 1002, 1023 (9th Cir. 2019). The government is "aware" of the Attachment A material information because the government concedes that its agents reviewed the Attachment A material in a host of different ways during their Attachment B process. ECF 406 at 4:1-5:25. Further, the government possessed the Attachment A material because it is physically impossible for the agents to access and review the Attachment A material while not possessing it at the same time.

Nor should the self-serving text of a government drafted sealing order carry the day—the government may not brief the Magistrate Judge about how its proposed sealing order might impact a defendant's Fifth and Sixth Amendment rights to *Brady/Giglio* material. Instead, this Court should look at the long history of Supreme Court and Ninth Circuit precedent which consistently hold that the government has an affirmative duty to seek out exculpatory information, the government may not be excused from disclosing what it does not know but could have learned, and cannot with its right hand say that it has nothing while its left hand holds what is of value. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *Carriger v. Stewart*, 132 F.3d 463, 479-80 (9th Cir. 1997) (en banc); *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).

Finally, the government's October 12, 2026 letter underscores why disclosure should occur here. After negotiating a plea agreement with Juarez where a key aspect of the benefit of the bargain—Juarez cooperating with the government, including waiving his Fourth Amendment rights and agreeing to provide the government with any documents it requested, in exchange for

the possibility of a reduce sentence if he performs his end of the bargain—the government asked him to confirm his consent and perform on his end of the bargain. Stephens Reply Declaration, Exhibits 1 and 2. Juarez refused. *Id.* The government did nothing to Juarez—even though Juarez's actions release the government from all of the promises it made to Juarez in the plea agreement. *Id.,* Exhibit 1, at 12:21-27. Yet, on this record, the government continues to press for the suppression of the Juarez Emails.

## IV. CONCLUSION

For the reasons stated above, defendants respectfully request that the Court grant this motion and order the government to produce the Juarez Emails.

Dated: October 14, 2026

JONES DAY

By: *__/s/ Neal J. Stephens__*
Edward W. Swanson
August Gugelmann
SWANSON & McNAMARA LLP

Neal J. Stephens
Jeffrey B. Schenk
Thao Donnelly
JONES DAY

Attorneys for David Trung Duong